# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

LISA TILTON,                                    :

                          Plaintiff,

        -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                        Defendant.            :

Case No. 3:09-cv-050

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury.

*Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment

or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on June 8, 2005, alleging disability from May 29, 2005, due to congenital hip dysplasia. *See* Tr. 53-65; 78. Plaintiff's application was denied initially and on reconsideration. *See* Tr. 34-42. A hearing was held before Administrative Law Judge Melvin A. Padilla, (Tr. 304-27), who determined that Plaintiff is not disabled. (Tr. 15-27). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe residuals of left total hip replacement and obesity, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 18 ¶ 3, Tr. 19 ¶ 4). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a reduced range of light work. (Tr. 20 ¶ 5). He then found that Plaintiff is unable to perform her past relevant work as a McDonald's manager (Tr. 25 ¶ 6) and then used sections 202.20 through 202.22 of the Grid as

a framework for deciding, coupled with a vocational expert's testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 25-26, ¶ 10). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 27, ¶11).

In her Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to her alleged mental impairments. (Doc. 8). Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged exertional impairments.

Plaintiff consulted with orthopedist Dr. Forster on May 11, 2005, at which time Dr. Forster reported that Plaintiff had a history of congenital hip dysplasia for the past twenty years, underwent surgery in the 1970s, had been doing well until about six weeks before this exam when she noticed increased groin discomfort with walking, and that she had problems getting in and out of cars and going up and down steps due to pain. (Tr. 128-30). Dr. Forster also reported that Plaintiff walked with an antalgic gait, her range of motion of the left hip was limited, there was weakness in the quadricep muscles and in the hip abductors, and that Plaintiff's straight leg raising was negative. *Id.* Dr. Forster noted that Plaintiff's neurovascular examination was intact and X-ray findings were consistent with a congenital hip dysplasia of the left hip. *Id.* Dr. Forster referred Plaintiff to a surgical specialist in congenital hip dysplasia. *Id.*

Treating physician Dr. Lombardi reported on May 31, 2005, that Plaintiff underwent hip reconstruction and leg shortening procedure on the left side at the age of twelve, that she had recently developed moderate pain in her groin when walking, and that she was being treated with pain medication. (Tr. 246-49). Dr. Lombardi also reported that Plaintiff's left hip range of motion was decreased, she had no fixed hip deformity of the left hip, there was a slight limp present, her left

leg was shorter than the right by two to three centimeters, and that x-rays revealed shallow acetabulum consistent with AVN and very severe joint space narrowing, bone densing, and osteophyte and cyst formation. *Id.* Dr. Lombardi recommended a primary total hip arthroplasty of the left hip. *Id.*

Plaintiff was hospitalized July 11-15, 2005, during which time she underwent a total left hip conversion arthroplasty which Dr. Lombardi performed. (Tr. 133-39).

Post-operative x-rays revealed, *inter alia,* post-traumatic change in the left innominate bone, degenerative changes in the lower lumbar spine as well as in both sacroiliac joints, a deformity of the interior pubic ramus suggesting a fracture of unknown age, and hypertrophic osseous changes in the proximal right femur. *Id.*

Plaintiff received follow-up care from Dr. Lombardi during the period August, 2005, through July, 2007. (Tr. 207-45; 264-66). Post-surgical x-rays of Plaintiff's hip consistently showed "satisfactory position and alignment" (Tr. 209, 215, 218, 222, 229, 233, 237, 240, 245, 266). In August, 2005, Dr. Lombardi noted that Plaintiff reported that she was still having frequent pain in the left hip and knee, her level of activity was sedentary with a minimum capacity for walking or other activities, and that she felt she needed a walker. *Id.* Dr. Lombardi noted further that Plaintiff walked with a moderate limp and he opined that Plaintiff suffered from a failed total hip arthroplasty/mechanical complication, that she would need a more conservative approach, and that a return to work should be delayed. *Id.* On September 16, 2005, Dr. Lombardi reported that Plaintiff was able to sit with comfort in any chair for one hour and was able to walk about two or three blocks. *Id.* On October 13, 2005, Dr. Lombardi noted that Plaintiff was still using a walker and that she had a slight limp and he extended her time off work for another two to three months.

*Id.* On January 3, 2006, Dr. Lombardi reported that Plaintiff described pain which occurred after walking for 30 minutes and that she was able to sit in an elevated chair for a half hour. *Id.* On March 31, 2006, Dr. Lombardi noted that Plaintiff indicated she needed one crutch for walking most of the time. *Id.* Dr. Lombardi opined that Plaintiff probably would never be able to perform a job that required moderate labor. *Id.*

Plaintiff attended six physical therapy sessions between October, 2005, and January, 2006. (Tr. 175-79). The therapist reported that Plaintiff had progressed toward her functional goal slowly but still lacked range of motion and strength. *Id.* The therapist also reported that Plaintiff was discharged from therapy due to slow progress and the possibility of inclement weather for travel, and that she was to continue an independent home program. *Id.*

The record contains Plaintiff's treatment notes from American Health and Pain Management dated November 16, 2005, to August 3, 2006. (Tr. 196-206). Those notes reveal that Plaintiff received treatment at that facility for blood pressure concerns, cough, restless leg syndrome, bronchitis, and psoriasis. (Tr. 198-206).

An associate of Dr. Lombardi's, Dr. Berend, noted on July 24, 2006, that Plaintiff complained of moderate pain on the left in the anterior, posterior, and lateral thigh when walking and standing and that her level of activity was sedentary. (Tr. 216-17). Dr. Berend also noted that Plaintiff reported she needed two crutches for walking and that she was able to walk only indoors. *Id.* Dr. Berend reported that Plaintiff had an observable moderate limp, her limb lengths were equal, her left hip ranges of motion were reduced, and that there was no fixed deformity of her left hip. *Id.* Dr. Berend reported that x-rays showed no changes, that her diagnosis was CDH/developmental dysplasia of the left hip, and he opined that Plaintiff had progressed to maximum and that she would

never be able to perform light/moderate labor activities. *Id.*

The transcript contains Plaintiff's treatment notes from the Allergy and Asthma Centre of Dayton dated May 17, through July 23, 2007. (Tr. 267-82). Those notes reveal that Plaintiff was treated at that facility for recurrent bronchitis and asthma. *Id.*

Plaintiff continued to receive treatment at Dr. Lombardi's practice and in July, 2007, Dr. Lombardi noted that Plaintiff reported that she needed two canes for walking most of the time, was able to walk only indoors, complained of mild pain on the left in the anterior thigh, and that her level of activity was semi-sedentary. (Tr. 264-66). Dr. Lombardi also reported that Plaintiff had an observable moderate limp, her left leg was one centimeter shorter than her right leg, she had decreased ranges of left hip motion, and that x-rays showed satisfactory position and alignment of the left total hip arthroplasty. *Id.*

Examining physician Dr. Harris reported on March 18, 2008, that Plaintiff had a history of congenital hip dysplasia status post eight hip surgeries including most recently, a left total hip arthroplasty in July, 2005, and that she was required by her surgeon to use bilateral crutches due to weakness in the hip muscles. (Tr. 250-62). Dr. Harris also reported that Plaintiff was able to stand from the chair, get on/off the table without difficulty, heel and toe walk without difficulty, had 5/5 strength in her upper and lower extremities, and that she had normal active/passive range of motion of the upper and lower extremities with the exception of the left hip which had decreased ranges of motion. *Id.* Dr. Harris noted that Plaintiff had normal sensation with the exception of over the incisional area on her left hip, had tenderness to palpation diffusely around the left hip into the thigh more so in the inguinal region anteriorly, but also over the greater trochanter laterally, and that there was no leg length discrepancy. *Id.* Dr. Harris identified Plaintiff's diagnoses as congenital

hip dysplasia, status post left total hip arthroplasty, left greater trochanter bursitis, and right ulnar nerve sensory neuropathy. *Id.* Dr. Harris opined that Plaintiff's condition would not improve, the pain she was experiencing would continue as well, she was not able to carry anything with her hands while ambulating, and that she had no problems with sitting for extended periods of time, using her hands, and doing overhead activities, but that she was unable to do anything while ambulating or standing. *Id.* Dr. Harris also opined that Plaintiff was able to lift up to ten pounds frequently and up to twenty pounds occasionally, was not able to carry any weight, was able to sit for six hours in an eight-hour day and for four hours without interruption, and that she was able to stand and walk each for one hour in an eight-hour day and for one hour without interruption. *Id.*

Dr. Lombardi reported on June 3, 2008, that Plaintiff's ability to lift/carry was affected by her impairment, she needed two crutches to ambulate secondary to muscle weakness, her ability to stand/walk were affected by her impairment, that her ability to sit was not affected by her impairment, and that she was able to sit for a total of six to seven hours during an eight-hour workday and for two hours without interruption. (Tr. 291-95). Dr. Lombardi opined that Plaintiff was not capable of performing sedentary work and that she would not be able to carry ten pounds and stand or ambulate with ten-pound objects. *Id.*

Treating physician Dr. Nanda reported on May 17, 2008, that he first treated Plaintiff on August 23, 2007, and last saw her on April 8, 2008. (Tr. 283-90). Dr. Nanda also reported that Plaintiff was not able to lift/carry any weight because she needed two crutches to walk, was able to stand/walk for one hour in an eight-hour day and for one-quarter hour without interruption, able to sit for two hours in an eight-hour day and for one-third hour without interruption, and that she was not able to perform either light or sedentary work. *Id.* Dr. Nanda identified Plaintiff's diagnoses

as asthma, gastroesophageal reflux disease, allergic rhinitis, restless leg syndrome, herpes zoster, depression/generalized anxiety, and right ulnar neuropathy, that she was required to use bilateral crutches in order to ambulate, and that she was limited as to how quickly and how far she could ambulate. *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to find that she satisfied Listing 1.02, by finding that she is capable of performing a limited range of light work, and by rejecting her allegations of disabling pain. (Doc. 8).

In support of her first Error, Plaintiff argues that the Commissioner erred by failing to find that she satisfies Listing 1.02.

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing). It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

Listing 1.02 requires a major dysfunction of a joint characterized by gross anatomical deformity and chronic pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint and findings on appropriate medically acceptable imagining of joint space narrowing, bony destruction, or ankylosis of the affected joint. 20 C.F.R. Part 404, Subpt. P., App.

1, § 1.02.

In finding that Plaintiff does not satisfy Listing 1.02, Judge Padilla concluded that the record did not establish that Plaintiff had any gross anatomical deformity clinically or on diagnostic imaging or that there was evidence of hip instability, weakness, or neurological deficits. (Tr. 20).      As noted above, Plaintiff underwent a total left hip conversion arthroplasty in July, 2005.  While Plaintiff's May, 2005, pre-operative x-rays revealed, *inter alia,* severe joint space narrowing,  subsequent post operative x-rays consistently revealed satisfactory position and alignment.  Even assuming that Plaintiff's one-time pre-operative x-ray satisfied the requirements of Listing 1.02, those x-rays do not suffice to establish that Plaintiff satisfied the duration requirements of the Act.

Under these facts, the Commissioner did not err by failing to find that Plaintiff satisfied Listing 1.02.

Plaintiff argues next that the Commissioner erred by rejecting her treating physicians' opinions as to her residual functional capacity.  Specifically, Plaintiff alleges that the Commissioner erred by finding that she is capable of performing a limited range of light work.  This Court agrees.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir.  2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)).  In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).  "A physician qualifies as a treating source if the claimant sees her

'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502).

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff is able to, *inter alia,* lift up to twenty pounds occasionally and ten pounds frequently and must be afforded the opportunity to alternate between sitting and standing at fifteen minute intervals. (Tr. 20). In doing so, Judge Padilla rejected the allegation that Plaintiff needs to use two crutches to ambulate. In addition, Judge Padilla rejected Plaintiff's treating physicians' opinions as to her residual functional capacity on the basis that there was no objective medical evidence to support those opinions. (Tr. 21-22).

First, Plaintiff's medical care providers have opined that Plaintiff is capable of lifting, at most, five pounds. The only evidence which arguably opposes the treating physicians' opinions are the opinions of the examining and reviewing physicians. In addition, with the arguable exception of the non-treating sources, none of the physicians of record have questioned Plaintiff's need to use two crutches. Indeed, long-term treating physician Dr. Lombardi opined that Plaintiff had a failed total hip arthroplasty/mechanical complication.

Under these facts, the Commissioner erred by finding that Plaintiff is capable of performing a limited range of light work. Therefore, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or

without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order. *Sullivan v. Finkelstein,* 496 U.S. 617 (1990). The fourth sentence does not require the district court to choose between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing." *Id.*

This Court concludes that the record does not establish Plaintiff's entitlement to benefits because not all of the factual issues have been resolved. Specifically, it is not clear from the VE's testimony whether there are any jobs in the economy that an individual who must use two crutches for ambulating, who therefore cannot lift or carry any weight while ambulating, and who is able to lift, at most, five pounds, is able to perform. *See,* Tr. 320-25. Accordingly, this matter should be remanded for additional administrative proceedings.

It is therefore recommended that, pursuant to the fourth sentence of 42 U.S.C. Sec. 405(g), the Commissioner's decision that Plaintiff is not disabled be reversed and that the matter be remanded to the Commissioner for additional administrative proceedings.

February 1, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).